UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DALE J. TOPPING,

      Plaintiff,

v.                         Case No: 2:14-cv-146-FtM-29DNF

KYLE COHEN, CHARLOTTE MASON,
SCOTT OWCZAREK, DIANE
SPADONI, NATASHA
VARNOVITSKY, JOHN DOES, and
other presently unknown
parties employed by or
affiliated with the U.S.
Department of Education,
JACQUENETTE THOMPSON, TERESA
GULICK, and NICOLE ROVIG,

      Defendants.

---

## OPINION AND ORDER

This matter comes before the Court on review of the following motions: Defendant Assistant United States Attorney Kyle Cohen's Motion to Dismiss (Doc. #73); plaintiff's Motion for Summary Judgment (Doc. #74); defendants Charlotte Mason, Diane Spadoni, Jacquenette Thompson, and Natasha Varnovitsky's Motion to Dismiss (Doc. #76); defendants Charlotte Mason, Diane Spadoni, Jacquenette Thompson, and Natasha Varnovitsky's Amended Motion to Dismiss (Doc. #77); Federal Defendants' Motion for Miscellaneous Relief (Doc. #78); plaintiff's Motion for Sanctions (Doc.#82); and defendants Scott Owczarek, Teresa Gulick, and Nicole Rovig's

Motion to Dismiss (Doc. #85). Plaintiff filed Responses (Doc. #79; Doc. #80; Doc. #81; Doc. #84; Doc. #87), defendants filed Responses (Doc. #83; Doc. # 88), and plaintiff filed a Reply (Doc. #89).

## I.

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citation omitted). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). This requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citations omitted).

In deciding a Rule 12(b)(6) motion to dismiss, the Court must accept all factual allegations in a complaint as true and take them in the light most favorable to plaintiff, Erickson v. Pardus, 551 U.S. 89 (2007), but "[l]egal conclusions without adequate factual support are entitled to no assumption of truth," Mamani v. Berzain, 654 F.3d 1148, 1153 (11th Cir. 2011) (citations

omitted).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.   "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible." Chaparro v. Carnival Corp., 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).   Thus, the Court engages in a two-step approach: "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Iqbal, 556 U.S. at 679.

Contrary to defendant Kyle Cohen's motion (Doc. #73, p. 4), "no heightened pleading rule requires plaintiffs seeking damages for violations of constitutional rights to invoke § 1983 expressly in order to state a claim." Johnson v. City of Shelby, Miss., 135 S. Ct. 346, 346-47 (2014) (citing Leatherman v. Tarrant Cnty. Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 164 (1993) (a federal court may not apply a standard "more stringent than the usual pleading requirements of Rule 8(a)" in "civil rights cases alleging municipal liability")); Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002) (imposing a "heightened pleading standard in employment discrimination cases conflicts with Federal Rule of Civil Procedure 8(a)(2).").

## II.

This is plaintiff's third federal lawsuit in Florida in connection with claims that various defendants violated his rights in connection with efforts to collect a disputed student loan issued by Michigan State University (MSU) in February 1982. Plaintiff filed the first case, Topping v. United States Department of Education, Case. No. 2:09-cv-396-FTM-29DNF, on June 9, 2009. On February 8, 2012, the district court dismissed the case, and on February 22, 2013, the Eleventh Circuit Court of Appeals affirmed the dismissal. Topping v. United States Dep't of Educ., 510 F. App'x 816 (11th Cir. 2013). The United States Supreme Court denied certiorari on October 15, 2013. Topping v. Dep't of Educ., 134 S. Ct. 432 (2013).

During the pendency of the appeal, plaintiff initiated an action against the United States pursuant to the Federal Tort Claims Act (FTCA). Topping v. United States, Case No. 2:12-cv-524-FTM-99SPC (M.D. Fla. Sept. 20, 2012). Plaintiff's FTCA action was dismissed as frivolous, and the dismissal was affirmed on appeal. Topping v. United States, Case No. 2:12-cv-524-FTM-99SPC, Doc. #30.

Plaintiff initiated this third action on March 17, 2014, by filing a three-count Complaint against Kyle Cohen, Charlotte Mason, Scott Owczarek, Dianne Spadoni, Natasha Varnovitsky, Jacquenette Thompson, Teresa Gulick, Nicole Rovig, John Does

employed by or affiliated with the United States Department of Education, and the United States Department of Education. (Doc. #1.) Plaintiff's Third Amended Complaint, filed October 9, 2014, asserts the following claims: (I) deprivation of rights under 42 U.S.C. § 1983 against defendants Gulick, Rovig, and Owczarek; (II) violation of the federal civil Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961, against defendants Cohen, Mason, Owczarek, Spadoni, Thompson, and Varnovitsky; and (III) violation of plaintiff's right to due process against defendants Cohen, Mason, Spadoni, Thompson, and Varnovitsky.[1] (Doc. #70.) The claims are asserted against the defendants in both their individual and official capacities.[2] (Doc. #70, ¶ 3.)

The facts alleged in the Third Amended Complaint are summarized as follows:

---

[1]Although John Does are named as parties in the Third Amended Complaint, no claims are alleged against them. The Court will therefore dismiss these defendants from this action.

[2]It is well established that "[o]fficial capacity claims are tantamount to a suit against the governmental entity involved." Jones v. Cannon, 174 F.3d 1271, 1293 n.15 (11th Cir. 1999). See also Kentucky v. Graham, 473 U.S. 159, 166 (1985) (official capacity suits represent another way of pleading an action against an entity of which the officer is an agent and shall be treated as a suit against the entity). As such, plaintiff's official capacity claims will be treated as claims filed against either the United States Department of Education or the Michigan Department of Education.

## A.   Background

In February 1982, plaintiff Dale Topping (Topping or plaintiff) took out a student loan in the amount of $2662.00 to fund his undergraduate studies at MSU.  After plaintiff withdrew from school due to an administrative error, the loan was refunded to the lender.  (Doc. #70, ¶ 15.)

Despite the fact that the 1982 loan had been refunded, Topping received a billing statement in April 1986 listing that loan.  (Id. ¶¶ 15-16.)  Plaintiff contacted the servicer of the loan, Wachovia Services, to inform them that the loan had been refunded.  (Id.)  Wachovia acknowledged the error and returned the loan to the Michigan Guaranty Agency (MGA) for investigation and resolution.  (Id. ¶ 17.)

Topping made monthly, on-time payments on his other student loans, beginning in June 1986 and ending with the final payment in April of 1991.  (Id. ¶ 19.)  The first seven payments, however, were not accounted for by the MGA, causing plaintiff to make six additional (over)payments.  (Id. ¶ 20.)

In October 1992, plaintiff and his attorney attended a conference with an Assistant Attorney General for the State of Michigan and George Lamb (Lamb) of the Michigan Department of Education regarding false credit reporting, accounting errors, and failure to acknowledge the refunded loan.  (Id. ¶ 21.)  At this meeting, plaintiff provided all of his documentation relating to

the disputed student loan.  (Id. ¶ 22.)  Plaintiff asserts it was agreed that plaintiff owed nothing, and Lamb stated that he would correct any errors.  (Id.)  Approximately ten days later, however, plaintiff's attorney advised plaintiff that the Michigan Department of Education had decided to litigate the matter.  (Id. ¶¶ 22-23.)

On or about October 7, 1993, plaintiff received a letter from the MGA stating that the United States Department of Education (DOE) held a claim against him for a defaulted loan, although no specific loan was identified.  (Id. ¶ 24.)  Plaintiff responded to the MGA's correspondence by filling out a form requesting a hearing, but never received a response.  (Id. ¶¶ 23-26.)

In January 1996, plaintiff began receiving letters from the DOE regarding the defaulted loan.  Plaintiff spoke with a DOE employee on several occasions, and again requested a hearing.  (Id. ¶ 27.)  On August 28, 1996, plaintiff received a letter from the DOE stating that his request for a hearing had been granted; however, there was an error on the letter that referred to plaintiff as "Toppina" rather than "Topping."  No corrected hearing notice was ever sent to plaintiff, and despite plaintiff's numerous requests, a hearing was never held.  (Id. ¶¶ 28-29.)

In November 1996, plaintiff contacted his congresswoman to investigate these events.  (Id. ¶ 30.)  Defendant Diane Spadoni (Spadoni), an employee of the DOE, was ultimately assigned to

resolve the matter.  (Id. ¶ 33.)  Topping contends that Spadoni received but refused to evaluate documentation that demonstrated he did not owe the MSU loan, that he did not complete that spring term at MSU, and that the unpaid account was clear.  (Id. ¶¶ 34-36.)

On or about March 27, 2002, plaintiff received a letter from NCO Systems, a contractor for the DOE, stating that it intended to collect the debt for which the DOE had received a judgment.  (Id. ¶ 40.)  Plaintiff sent NCO Systems several letters demanding a copy of the "judgment," but one was never provided.  (Id. ¶ 40.) In September 2002, plaintiff sent the DOE a certified letter regarding the letter he received from NCO Systems, and once again requested a hearing.  (Id. ¶ 41.)

Instead of being scheduled for a hearing, on or about November 13, 2002, plaintiff received a garnishment hearing decision from the DOE's office in Atlanta, Georgia.  (Id. ¶ 42.) The DOE, however, had failed to inform plaintiff that such a hearing would be held.  (Id. ¶ 42.)  Topping alleges that in a January 2003 telephone conversation, the DOE could not explain why his requests for a hearing were not in the DOE records.  (Id. ¶ 43.)

From 2002 until 2009, plaintiff received notices from various collection agencies regarding his student loan.  After receipt of each notice, plaintiff sent each agency a certified letter stating

that he had never been afforded a proper hearing, but received no response. (<u>Id.</u> ¶ 44.)

Plaintiff suffered permanent back injuries in a car crash in 2007, and was declared disabled by the Social Security Administration in June 2009. (<u>Id.</u> ¶ 45.)

In or about June 2009, plaintiff discovered that 15% of his disability payment was being administratively offset by the DOE and that his income tax refund had been seized by the DOE. (<u>Id.</u> ¶¶ 46-47.) Topping had received no prior notice of such actions. (<u>Id.</u> ¶ 46.) On June 19, 2009, plaintiff initiated his first civil action in this Court against the DOE and the Michigan Higher Education Authority. See <u>Topping v. United States Dep't of Educ.</u>, Case No. 2:09-cv-396-FTM-29DNF (M.D. Fla. June 19, 2009).

Topping suffered serious health emergencies in August and September 2009, which left permanent brain damage, resulting in memory loss and aphasia. (<u>Id.</u> ¶ 47.)

On about November 8, 2009, plaintiff received a letter from defendant Jacquenette Thompson (Thompson), an employee of the DOE. The letter stated that it was sent in response to plaintiff's request for a garnishment hearing and indicated that a hearing would be held by telephone on November 25, 2009. Plaintiff asserts that he did not request this hearing. (<u>Id.</u> ¶¶ 48-49.)

On November 25, 2009, Thompson and defendant Charlotte Mason (Mason) called plaintiff and conducted the hearing telephonically.

(Id. ¶ 53.)  Topping offered to provide the documents previously given to others concerning the matter.  (Id. ¶ 54.)  Thompson and Mason stated that the DOE records indicated that plaintiff had never shown up for the 2002 hearing.  (Id. ¶ 55.)  After the call, plaintiff sent Thompson and Mason his documentation, and verified via e-mail that the documents had been received.  (Id. ¶¶ 56-60.)

In March 2010, plaintiff received a "Garnishment Hearing Decision" letter dated March 18, 2010 from Thompson which determined that plaintiff owed a balance of $7800.91 in principal and interest.  (Id. ¶ 62.)  The decision stated in pertinent part that "MSU and Department records indicate that you attended for a long enough length of time that no tuition refund from the school was to be paid to your loan holder."  The decision listed in an Attachment the evidence and documents considered, and stated plaintiff could seek reconsideration of the decision.  Plaintiff then amended his first lawsuit to include Thompson and Mason as defendants, alleging that someone at the DOE had altered his documentation.  (Id. ¶ 63.)

**B.   Bases for Current Claims**

On January 26, 2010, defendant Scott Owczarek (Owczarek), then an assistant to the Registrar at MSU (Doc. #70, ¶ 9), wrote a letter "To Whom It May Concern," stating in pertinent part: "This is to certify that Dale J. Topping was registered as a full-time student at Michigan State University for the Spring 1982 term

10

(3/31/82–6/11/82). We show grades were issued for all courses therefore assume he was enrolled the entire semester." (Id. ¶ 65.) The letter was prepared in response to a request from defendant Natasha Varnovitsky (Varnovitsky), a licensed attorney and independent contractor working with the DOE (id. ¶ 13), and was faxed to Varnovitsky by defendant Teresa Gulick (Gulick) (id. ¶ 66), a staff employee of the MSU Registrar's Office (id. ¶ 7).

Plaintiff, believing that the content in the letter was fabricated, requested a verification from defendant Nicole Rovig (Rovig), the Registrar at MSU. (Id. ¶ 67.) Rovig responded on January 7, 2011, with a letter stating that the Office of the Registrar had no record of Owczarek's letter, the language used within the letter was inconsistent with the standard language used in enrollment verification letters, and there were other discrepancies within the document that called the authenticity of the letter into question. (Doc. #1-1, p. 29; Doc. #70, ¶ 68.)[3] Plaintiff filed the letter with the Court in plaintiff's first case. (Doc. #70, ¶ 70.)

After the Rovig letter was filed, defendant Kyle Cohen (Cohen), the Assistant United States Attorney representing the DOE

---

[3]Plaintiff's summary of the letter at paragraph 68 is not accurate, but the letter is part of the pleading and/or motion and speaks for itself. Lawrence v. United States, 597 F. App'x 599, 602 (11th Cir. 2015).

and its employees in Case No. 2:09-cv-396-FTM-29DNF (id. ¶ 6),
contacted Rovig to get an explanation for the discrepancy between
Owczarek's letter and Rovig's letter (id. ¶¶ 67, 71).  On January
13, 2011, Rovig authored a Memorandum which confirmed that the
Owczarek letter provided by the Office of the Registrar on January
26, 2010, was authentic.  (Doc. #1-1, p. 30.)  The Memorandum
stated that Varnovitsky requested the dates of plaintiff's
enrollment at MSU during the spring 1982 term, and asked whether
he attended for the entire term.  Since the Office of the Registrar
had no such attendance records for that time period, it was unable
to confirm Topping's attendance.  Varnovitsky then asked that MSU
include a statement indicating that plaintiff was enrolled for the
entire term, prompting the following sentence in the January 26,
2010 letter: "We show grades were issued for all courses therefore
assume he was enrolled the entire semester."  (Id.)[4]  As to the
authenticity of the letter, the memorandum stated that the letter
was printed on old letterhead as a result of an administrative
oversight, but was authentic.  (Id.)  Cohen subsequently filed
Rovig's memorandum in Case No. 2:09-cv-396-FTM-29DNF.  (Id. ¶ 74.)

    Plaintiff once again contacted Rovig and suggested that it
may be appropriate for someone at MSU to state the truth.  (Id. ¶

---

[4]Paragraph 73 of plaintiff's Third Amended Complaint is not
an accurate summary of the letter, but the letter speaks for
itself.

75.)  On January 19, 2011, Robert Noto (Noto), the Director of MSU's Office of the General Counsel, provided plaintiff with a letter explaining the circumstances surrounding the January 26, 2010 letter.  (Id. ¶¶ 76-77.)  Specifically, Noto stated that Varnovitsky coerced and intimidated Owczarek into making false claims and that plaintiff's records appear to be factually consistent with plaintiff's position.[5]  (Doc. #1-1, p. 31.)

Plaintiff asserts that Thompson had colluded with Varnovitsky prior to sending plaintiff the Garnishment Hearing Decision (Doc. #70, ¶¶ 78-79), and had considered "secret evidence" in connection with the garnishment hearing (id. ¶ 66).  Plaintiff alleges that as a result of the false statements by the three MSU employees, his property, i.e., his tax refunds and Social Security Disability Income (SSDI) benefits, were unlawfully seized in 2009 by United States Treasury administrative offsets under the Debt Collection Act of 1982, 31 U.S.C. § 3701 et. seq., and was repeatedly seized in 2013 and 2014 in violation of the Debt Collection Act.  (Id. ¶ 92.)  Plaintiff seeks more than $1 million in damages.  (Id. ¶ 3.)

### III.

Defendants now move for dismissal of plaintiff's Third Amended Complaint for various reasons.  Plaintiff opposes all motions to dismiss.

---

[5]Defendants dispute the authenticity of the Noto letter.

## A.    Count I

Count I, read liberally, alleges that plaintiff was deprived of his constitutional right to procedural due process in connection with the offset of his property in 2009 and the garnishment hearing held on November 25, 2009, which has resulted in continued unlawful takings of his social security benefits.  Plaintiff asserts that three MSU employees - Owczarek, Gulick, and Rovig - knowingly and willfully assisted Varnovitsky by providing false information as to his attendance at MSU in February 1982, and that the false information was used in the garnishment hearing and tainted the findings of fact in the garnishment decision.  The basis for this count as to Owczarek is the January 26, 2010 letter he authored; as to Gulick, the basis is that she placed Owczarek's signature on the letter and faxed the January 26, 2010 letter to the DOE; and the basis of this count as it applies to Rovig is the January 2011 letter and Memorandum regarding plaintiff's enrollment at MSU in February 1982.

Owczarek, Gulick, and Rovig contend that Count I should be dismissed with prejudice because (1) plaintiff has failed to sufficiently state a claim upon which relief may be granted; (2) they are shielded by qualified immunity; and (3) the claims are untimely under the applicable statutes of limitations.  Plaintiff argues to the contrary.  The Court agrees with defendants' first argument, and therefore need not address the latter two.

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege (1) that the defendant deprived the plaintiff of a right secured under the United States Constitution or federal law[6] and (2) that such deprivation occurred under color of state law." Arrington v. Cobb Cnty., 139 F.3d 865, 872 (11th Cir. 1998). Plaintiff must also allege a causal connection between defendants' conduct and the deprivation of his constitutional right. Swint v. City of Wadley, Ala., 51 F.2d 988, 999 (11th Cir. 1995). To state a § 1983 claim for the denial of procedural due process, a plaintiff must allege (1) a deprivation of a constitutionally protected property or liberty interest; (2) state action; (3) and constitutionally inadequate process. J.R. v. Hansen, 736 F.3d 959, 965 (11th Cir. 2013); Miccosukee Tribe of Indians v. United States, 716 F.3d 535, 559 (11th Cir. 2013). As a general matter, due process requires notice and an opportunity to be heard before a person may be deprived of property. Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 542 (1985); Gilbert v. Homar, 520 U.S. 924, 929 (1997).

---

[6]In support of his claim under § 1983, plaintiff cites to numerous provisions of Florida law that were allegedly violated by Owczarek, Gulick, and Rovig. (Doc. #70, pp. 26-27.) Violations of state law, however, cannot serve as the basis for a claim brought under § 1983. See Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995) (a cause of action filed pursuant to § 1983 cannot seek to vindicate state law rights, but only "a right secured by federal law").

There can be no § 1983 claim upon which relief against the three MSU employees may be granted to the extent plaintiff asserts a violation of procedural due process by the offsets in 2009. The correspondences at issue were not created until January 2010 and January 2011, and therefore could not have been a cause of any action taken by the DOE which resulted in plaintiff's property being seized by offset in 2009. The portion of Count I of the Third Amended Complaint alleging a violation based on conduct occurring before January 26, 2010, is dismissed with prejudice.

Similarly, the January 7, 2011 Memorandum authored by Rovig could not have been a basis for any due process violation resulting in the seizure of plaintiff's social security benefits. The final hearing decision was dated March 18, 2010, long before the Rovig Memorandum even existed. The portion of Count I of the Third Amended Complaint alleging a violation based on Rovig's January 7, 2011 Memorandum is dismissed with prejudice.

Assuming that the January 26, 2010 letter was false and was considered by the DOE after the November 2009 telephone hearing and before issuance of the March 2010 garnishment decision, Count I fails to state a procedural due process claim against the MSU employees. The Third Amended Complaint not only fails to adequately allege causation by these defendants for a procedural due process violation, but effectively establishes the lack of any possible causation by the three MSU defendants.

The Supreme Court has recognized that the United States may offset Social Security benefits to collect a student loan debt even if that debt has been outstanding for over ten years. Lockhart v. United States, 546 U.S. 142 (2005).  The Eleventh Circuit has described the process:

> "The practice of withholding federal payment in satisfaction of a debt is known as an administrative offset." Reeves v. Astrue, 526 F.3d 732, 738 n.3 (11th Cir.), petition for cert. filed (U.S. Aug. 1, 2008) (No. 08-5605).  The Debt Collection Improvement Act of 1982, 31 U.S.C. §§ 3701 et seq., authorizes the Treasury Department "to collect non-tax debts by withholding funds paid out by other federal agencies." Reeves, 526 F.3d at 738 n.3; see 31 U.S.C. § 3716(a); 31 C.F.R. § 285.5.  Pursuant to the TOP, any federal agency with a claim against the debtor, after notifying the debtor that the debt is subject to administrative offset and providing an opportunity to dispute the debt or make arrangements to pay it, may collect the debt by administrative offset. See 31 U.S.C. § 3716(a), (c)(6). In order to do so, the creditor agency must certify to Treasury that the debt is eligible for collection by offset[3] and that all due process protections have been met.  See 31 C.F.R. § 285.5(d)(3)(ii), (d)(6).  If properly certified, the Treasury Department must administratively offset the debt.  See 31 U.S.C. § 3716(c)(1)(A).
>
> > [3]To be eligible for collection by administrative offset, a debt submitted to Treasury must be: (1) past-due in the amount stated by the creditor agency; (2) legally enforceable; (3) less than ten years delinquent, unless the debt legally may be offset if more than ten years delinquent; (4) more than $25; and (5) not secured by collateral subject to a pending foreclosure action. See 31 C.F.R. § 285.5(d)(3)(i).

Johnson v. United States Dep't of Treasury, 300 F. App'x 860, 862 (11th Cir. 2008).  Johnson affirmed a dismissal of a complaint

because the Department of Treasury had no control over the debt or any obligation to ensure that a debtor receive due process under law.  Id. at 862-63.

So to in this case.  The process afforded plaintiff was controlled not by any of the MSU defendants, but by the DOE. Whatever process was given to plaintiff was not impacted by the MSU defendants, regardless of what the letters stated.  If the process was deficient, it was not because of anything for which the MSU defendants are responsible.

Additionally, a claim for denial of procedural due process is actionable under § 1983 only when the government refuses to provide a process sufficient to remedy the procedural deprivation. McKinney v. Pate, 20 F.3d 1550, 1557 (11th Cir. 1994) (en banc). It is clear that there was a constitutionally sufficient process available to plaintiff to contest the findings of the garnishment decision.  Plaintiff simply chose to ignore the proper process, and sue without legal basis.  The garnishment decision told plaintiff he could request reconsideration of that decision.  The offset was governed by the Fair Debt Collection Act, and the Administrative Procedure Act (APA), 5 U.S.C. §§ 701, et seq., which provides that administrative decisions, such as the Garnishment Hearing Decision, may be reviewed by a district court.  Omegbu v. United States Dep't of Treasury, 118 F. App'x 989, 990 (7th Cir.

2004). Accordingly, Count I is dismissed with prejudice as to all three MSU defendants.[7]

Count I is also dismissed to the extent that it attempts to assert an official capacity claim against the MSU defendants. The Supreme Court has held that government entities may be sued under § 1983 for only their own unconstitutional or illegal policies; they may not be sued for the acts of their employees. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 691 (1978). See also Topping v. United States Dep't of Educ., 510 F. App'x 816, 818 (11th Cir. 2013). Thus, a plaintiff seeking to impose § 1983 liability on a government entity must prove that "action pursuant to official municipal policy" caused their injury. Connick v. Thompson, 131 S. Ct. 1350, 1359 (2011) (quoting Monell, 436 U.S. at 691). No such allegations are contained in the Third Amended Complaint. Count I is therefore dismissed to the extent that it asserts an official capacity claim against Owczarek, Gulick, and Rovig.

**B. Count II**

In Count II of the Third Amended Complaint, plaintiff alleges that Cohen, Mason, Owczarek, Spadoni, Thompson, and Varnovitsky violated of the federal civil RICO statutes by engaging in a criminal enterprise to deny plaintiff of his right to due process

---

[7]Count I is also dismissed to the extent that it attempts to assert a claim against the MSU defendants in their official capacity.

of law in order to unlawfully obtain his property.   Plaintiff relies upon the same basic factual allegations summarized earlier regarding his disputed February 1982 loan at MSU.

Section 1962(c) of the RICO Act makes it unlawful "for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity."   18 U.S.C. § 1962(c).   To establish a federal civil RICO violation under § 1962(c), the plaintiff must prove (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and (5) injury to "business or property" (6) that was "by reason of" the substantive RICO violation.   Williams v. Mohawk Indus., 465 F.3d 1277, 1282 (11th Cir. 2006), cert. denied, 549 U.S. 1260 (2007) (citing 18 U.S.C. §§ 1962(c), 1964(c)).   For purposes of defendants' motions, the Court will only address elements (3) and (4)-a pattern of racketeering activity.

To establish a pattern of racketeering activity, plaintiff must establish at least two distinct but related acts of racketeering activity.   Williams, 465 F.3d at 1283.   The RICO Act defines "racketeering activity" comprehensively in 18 U.S.C. § 1961(1) to include a variety of enumerated criminal offenses.   In this matter, plaintiff believes that various defendants committed

the following offenses: bribery of a public official in violation
of 18 U.S.C. § 201; mail fraud in violation of 18 U.S.C. § 1341;
wire fraud in violation of 18 U.S.C. § 1343; and tampering with a
witness in violation 18 U.S.C. § 1512.[8]

**(1)   Defendant Cohen**

Cohen is the Assistant United States Attorney who represented
the DOE and its employees in plaintiff's first lawsuit.  Plaintiff
alleges that he committed two predicate RICO acts.   First,
plaintiff alleges that on December 30, 2010, Cohen filed a document
with the court in plaintiff's first lawsuit which was
"reinforcement of what Cohen knew to be false" in order to
contribute to the unlawful deprivation of due process.  (Doc. #70,
p. 54.)  Plaintiff asserts that this filing constitutes obstruction
of justice and concealment of evidence in violation of two federal
criminal statutes, and a violation of three state statutes.
Second, plaintiff alleges that on January 9, 2011, Cohen telephoned
Rovig to threaten or intimidate her to make her change her
testimony, in violation of two federal statutes and three state
statutes.  (Id. at pp. 54–55.)

---

[8]Plaintiff also believes that defendants violated other
provisions located in Title 18 of the United States Code and the
Florida statutes.  The cited provisions, however, do not qualify
as predicate acts.  See 18 U.S.C. § 1961(1).

While denying any misconduct, Cohen argues that he is entitled
to absolute immunity.  The Court agrees.  The Eleventh Circuit has
held that "assistant attorneys general were absolutely immune from
claims related to their advocacy functions in defending state
officers in civil rights suits." McConnell v. King, 42 F.3d 471,
472 (11th Cir. 1994) (citing Murphy v. Morris, 849 F.2d 1101, 1105
(8th Cir. 1988)).  The Court finds that the same principle applies
to assistant United States Attorneys defending government agencies
and their employees in a civil rights case.  Since all of the
conduct alleged against Cohen clearly relates to his advocacy
function in defending against plaintiff's first lawsuit, he is
entitled to absolute immunity.  Count II is dismissed with
prejudice as to Cohen.

Cohen also argues that the claim fails to state a cause of
action and is frivolous.  For the reasons stated below, the Court
agrees, and in the alternative grants the motion to dismiss on
that basis.  The Court need not address Cohen's affirmative defense
regarding the statute of limitations.

### (2)   Defendant Mason

All of the alleged predicate acts relating to Mason relate to
her role as "team leader" for the Thompson garnishment hearing,
which plaintiff describes as a sham proceeding that reached the
wrong result.  Plaintiff asserts that Mason is responsible for
Thompson's performance, and that Mason's "series of supervisory

errors could have but one design: to assist in the intentional denial of the lawful process as described in 20 USC § 1095a [the garnishment requirements for the Higher Education Act]." (Doc. #70, pp. 56-57.) This constituted, plaintiff asserts, an obstruction of justice under 18 U.S.C. § 1505, concealment of evidence under 18 U.S.C. § 1001, and a violation of three state law statutes. Assuming these alleged violations qualify as predicate acts, which they do not,[9] the Court finds that plaintiff has failed to plausibly allege that Mason violated 18 U.S.C. § 1505 or 18 U.S.C. § 1001.

Under 18 U.S.C. § 1505, it is a crime to "corruptly, or by threats or force, or by any threatening letter or communication influences, obstructs, or impedes or endeavors to influence, obstruct, or impede the due and proper administration of the law under which any pending proceeding is being had before any department or agency of the United States." 18 U.S.C. § 1505. The term "corruptly" means "acting with an improper purpose, personally or by influencing another, including making a false or misleading statement, or withholding, concealing, altering, or

---

[9]Obstruction of justice under 18 U.S.C. § 1503, titled "Influencing or injuring officer or juror generally," qualifies as a predicate act under 18 U.S.C. 1961(1), but a violation of 18 U.S.C. § 1505, titled "Obstruction of proceedings before departments, agencies, and committees," does not. See 18 U.S.C. § 1961(1).

destroying a document or other information." 18 U.S.C. § 1515(b). Nothing in the pleadings show any plausible basis to believe Mason's supervisory acts in this case amounted to a violation of § 1505.

To establish a violation of 18 U.S.C. § 1001, plaintiff must prove: "(1) that the defendant made a false statement; (2) that the statement was material; (3) that the defendant acted with specific intent to mislead; and (4) that the matter was within the purview of a federal government agency." United States v. McCarrick, 294 F.3d 1286, 1290 (11th Cir. 2002). A false statement is material if it has "a natural tendency to influence, or be capable of influencing, the decision of the decisionmaking body to which it was addressed. United States v. House, 684 F.3d 1173, 1203 (11th Cir. 2013). Actual influence is not required. Id. Plaintiff has failed to allege facts which plausibly show that Mason violated § 1001.

**(3)   Defendant Owczarek**

Plaintiff alleges that Owczarek's January 10, 2010 letter certifying that plaintiff had been enrolled in and attending classes at MSU in the spring of 1982 constituted obstruction of justice under 18 U.S.C. § 1505, concealment of evidence under 18

U.S.C. § 1001, and a violation of three Florida statutes.[10] Plaintiff further alleges that Owczarek had been offered a reward to make the false statements, which he argues constitutes bribery of public official or witness under 18 U.S.C. § 201.  As with Cohen and Mason, plaintiff has failed to allege facts establishing a plausible basis to belief Owczarek committed such predicate acts.

It is a federal crime to offer something of value to a public official with the intent to influence an official act.  18 U.S.C. § 201(b)(1).  It is also unlawful for a public official to seek, receive, or accept anything of value in return for being influenced in the performance of any official act.  18 U.S.C. § 201(b)(2). Plaintiff believes that Owczarek authored the January 26, 2010 letter in response to a bribe from Varnovitsky.  After reviewing the Third Amended Complaint, the Court finds that there are no factual allegations supporting the alleged bribe.  Because plaintiff has offered nothing more than conclusions without adequate factual support, the alleged bribery of a public official does not qualify as a predicate act.

### (4)   Defendant Spadoni

Plaintiff alleges that Spadoni refused to provide a Title IV hearing to plaintiff in October 1993 and in August 1996, and

---

[10]As previously stated, obstruction of justice under 18 U.S.C. § 1505 and concealment of evidence under 18 U.S.C. § 1001 do not qualify as a predicate acts under 18 U.S.C. § 1961(1).

authored letters about the refusal to provide a hearing in August 1996. Plaintiff asserts that Spadoni's actions constitute an obstruction of justice under 18 U.S.C. § 1505. Refusal to provide a hearing as required by 20 U.S.C. § 1095a, would not constitute an obstruction of justice under the facts alleged, and in any event would not come within the ten year requirement of 18 U.S.C. § 1961(5). See generally Rotella v. Wood, 528 U.S. 549, 552 (2000).

Plaintiff also alleges that Spadoni committed numerous acts of mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. In order to establish mail and wire fraud, a plaintiff must establish (1) defendants' intentional participation in a scheme to defraud (2) the plaintiff of money or property (3) using interstate mails and wires in furtherance of the scheme (4) resulting in plaintiff's injury (5) that can be quantified as a specific amount of damages. See 18 U.S.C. §§ 1341, 1343. "A scheme to defraud requires proof of a material misrepresentation, or the omission or concealment of a material fact calculated to deceive another out of money or property." United States v. Maxwell, 579 F.3d 1282, 1299 (11th Cir. 2009) (citing United States v. Svete, 556 F.3d 1157, 1161, 1169 (11th Cir. 2009)). Plaintiff must also establish that he reasonably relied upon the false statements. Green Leaf Nursery v. E.I. DuPont De Nemours and Co., 341 F.3d 1292, 1306 (11th Cir. 2003); Pelletier v. Zweifel, 921 F.2d 1465, 1503 (11th Cir. 1991). When, as in the instant case, a plaintiff alleges

26

that the defendants engaged in a scheme to defraud manifested by multiple crimes of mail and/or wire fraud, the complaint must meet the heightened pleading standard of Fed. R. Civ. P. 9(b). <u>American Dental Ass'n v. Cigna Corp.</u>, 605 F.3d 1283, 1291 (11th Cir. 2010).[11]

The Third Amended Complaint asserts that Spadoni committed at least five acts of mail fraud.  Plaintiff, however, has failed to plausibly allege that any of the misrepresentations were material or that he was misled by the allegedly false statements. To the contrary, plaintiff alleges that he knew the statements to be false.  Because plaintiff does not allege that he was misled by an allegedly fraudulent statement, the claims of mail fraud against Spadoni are inadequately pled.  <u>See</u> <u>American Dental Ass'n</u>, 605 F.3d at 1292.

**(5)  Defendant Thompson**

Plaintiff alleges that Thompson committed mail and wire fraud by sending plaintiff a letter on November 8, 2009, conducting the November 25, 2009 garnishment hearing telephonically, and sending plaintiff the "Garnishment Hearing Decision" in March 2010.  As was the case with Spadoni, plaintiff has failed to allege facts

---

[11]Under Rule 9(b), a plaintiff must allege: "(1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the plaintiff; and (4) what the defendants gained by the alleged fraud." <u>American Dental Ass'n</u>, 605 F.3d at 1291 (quoting <u>Brooks v. Blue Cross & Blue Shield of Fla., Inc.</u>, 116 F.3d 1364, 1380-81 (11th Cir. 1997)).

establishing that Thompson made a material misrepresentation or that plaintiff was misled by Thompson's actions.

Even if plaintiff had plausibly alleged an act of mail or wire fraud, dismissal would still be warranted because Thompson is entitled to absolute immunity. In Butz v. Economou, 438 U.S. 478 (1978), the Supreme Court concluded that federal hearing examiners and administrative law judges are "entitled to absolute immunity from damages liability for their judicial acts." Fed. Mar. Comm'n v. S.C. State Ports Auth., 535 U.S. 743, 757 (2002) (quoting Butz, 438 U.S. at 514). See also Smith v. Shook, 237 F.3d 1322, 1325 (11th Cir. 2001) (holding that administrative law judges "are entitled to absolute judicial immunity because their responsibilities are functionally comparable to those of trial judges, including issuing subpoenas, ruling on evidence, regulating hearings, and making or recommending decisions.") Since all of the allegations against Thompson are based on her role as hearing official for the DOE, she is entitled to absolute immunity. Count II is therefore dismissed with prejudice as to Thompson.

### (6) Defendant Varnovitsky

On January 26, 2010, Varnovitsky telephoned Owczarek and requested a letter regarding plaintiff's enrollment at MSU in February 1982. Plaintiff believes Varnovitsky's actions constitute wire fraud under 18 U.S.C. § 1343, obstruction of

justice under 18 U.S.C. § 1505, bribery of a public official under 18 U.S.C. § 201, and a violation of four Florida statutes.  The Court, however, is unable to find any factual allegations supporting plaintiff's contentions.  Plaintiff has therefore failed to plausibly allege that Varnovitsky violated 18 U.S.C. §§ 201, 1343, or 1505.

In conclusion, the Court finds that plaintiff has failed to plausibly allege that defendants engaged in a pattern of racketeering activity.[12]  Accordingly, Count II is dismissed for failure to state a claim upon which relief may be granted.

## C.   Count III

In Count III, plaintiff alleges that Cohen, Mason, Spadoni, Thompson, and Varnovitsky violated his constitutional right to procedural due process.  Civil actions against federal employees in their individual capacities for violations of federal

---

[12]The Court further finds that plaintiff is unable to state a civil RICO claim against the DOE and the Michigan Department of Education because government entities cannot be held civilly liable under 18 U.S.C. § 1964(c).  See McNeill v. Town of Paradise Valley, 44 F. App'x 871 (9th Cir. 2002) (citing Lancaster Cmty. Hosp. v. Antelope Valley Hosp., 940 F.2d 397, 404 (9th Cir. 1991)) (holding that a government entity cannot constitute a RICO enterprise); McNeily v. United States, 6 F.3d 343, 350 (5th Cir. 1993) (citing Berger v. Pierce, 933 F.2d 393, 397 (6th Cir. 1991)) (holding that a federal agency may not be sued under the federal RICO statute); Pine Ridge Recycling, Inc. v. Butts Cnty., Ga., 855 F. Supp. 1264, 1273-74 (M.D. Ga. 1994) (holding that state agencies cannot be held civilly liable under 18 U.S.C. § 1964(c) because they are incapable of forming the criminal intent necessary for the commission of a predicate act).

constitutional rights are governed by Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971). See Hartman v. Moore, 547 U.S. 250, 254 (2006). Bivens involved alleged violations of the Fourth Amendment, but the Supreme Court has also allowed Bivens actions for violations of the Due Process Clause of the Fifth Amendment. Wilkie v. Robbins, 551 U.S. 537, 549 (2007); Alba v. Montford, 517 F.3d 1249, 1252-53 (11th Cir. 2008).

Damages can be obtained in a Bivens action when (1) the plaintiff has no alternative means of obtaining redress and (2) no "special factors counseling hesitation" are present. Hardison v. Cohen, 375 F.3d 1262, 1264 (11th Cir. 2004) (quoting Stephens v. Dep't of Health & Human Servs., 901 F.2d 1571, 1575-76 (11th Cir. 1990)). "Those special factors 'include an appropriate judicial deference' toward the will of Congress: 'When the design of a Government program suggests that Congress has provided what it considers adequate remedial mechanisms for constitutional violations that may occur in the course of its administration, we have not created additional Bivens remedies.'" Hardison, 375 F.3d at 1264 (quoting Schweiker v. Chilicky, 487 U.S. 412, 423 (1988)).

In Topping v. United States Dep't of Educ., 510 F. App'x 816 (11th Cir. 2013), the Eleventh Circuit reiterated that the existence of a right to judicial review under the APA is sufficient to preclude an individual from bringing a Bivens action. Topping,

510 F. App'x at 819 (citing <u>Miller v. United States Dep't of Agric.</u>
<u>Farm Servs. Agency</u>, 143 F.3d 1413, 1416-17 (11th Cir. 1998)).
Because plaintiff had an opportunity to be heard in connection
with the wage garnishment proceedings and had the opportunity to
seek judicial review of the wage garnishment decision, the Court
finds that plaintiff cannot maintain a <u>Bivens</u> action against Cohen,
Mason, Spadoni, Thompson, and Varnovitsky.  Count III is dismissed
with prejudice as to Cohen, Mason, Spadoni, Thompson, and
Varnovitsky.

   To the extent that plaintiff attempts to state a <u>Bivens</u> claim
against the DOE, the Court finds that he has failed to do so.  <u>See</u>
<u>Topping</u>, 510 F. App'x at 818 (a plaintiff may bring a cause of
action against a government official acting in his or her
individual capacity, but not against a federal agency); <u>Thibeaux</u>
<u>v. United States Atty. Gen.</u>, 275 F. App'x 889, 893 (11th Cir. 2008)
(A <u>Bivens</u> claim may be asserted against a federal officer acting
in his individual capacity but not his official capacity); <u>Okpala</u>
<u>v. Jordan</u>, 193 F. App'x 850, 852 (11th Cir. 2006) (per curiam) ("A
<u>Bivens</u> cause of action may not be brought against federal
agencies.").  Accordingly, Count III is dismissed in its entirety.

**IV.**

   "[A] district court must grant a plaintiff at least one
opportunity to amend [his] claims before dismissing them if it
appears a more carefully drafted complaint might state a claim

upon which relief can be granted even if the plaintiff never seeks leave to amend." Silva v. Bieluch, 351 F.3d 1045, 1048 (11th Cir. 2003) (internal quotations omitted).   A district court need not grant such leave if an amendment would be futile.   Cockrell v. Sparks, 510 F.3d 1307, 1310 (11th Cir. 2007).   "Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed."   Id.

In this case, the Court finds that any amendment to plaintiff's complaint would be futile because the allegations in the Third Amended Complaint do not support a viable claim. Furthermore, the claims in this matter are based upon the same "fanciful" allegations referred to by the Eleventh Circuit in Topping v. United States, Case No. 2:12-cv-524-FTM-99SPC, Doc. #30 (holding that "Topping's complaint contains fanciful allegations that make it frivolous").   Because a more carefully drafted complaint would not state plausible claims in this case, this action will be dismissed with prejudice.

Accordingly, it is now

**ORDERED:**

1.   Defendant Assistant United States Attorney Kyle Cohen's Motion to Dismiss (Doc. #73) is **GRANTED.**

2.   Plaintiff's Motion for Summary Judgment as to Defendants USA (Doc. #74) is **DENIED as moot.**

3.    Defendants Charlotte Mason, Diane Spadoni, Jacquenette Thompson, and Natasha Varnovitsky's Motion to Dismiss (Doc. #76) is **DENIED as moot.**

4.    Defendants Charlotte Mason, Diane Spadoni, Jacquenette Thompson, and Natasha Varnovitsky's Amended Motion to Dismiss (Doc. #77) is **GRANTED.**

5.    Federal Defendants' Motion for Miscellaneous Relief (Doc. #78) is **DENIED as moot.**

6.    Plaintiff's Motion for Sanctions (Doc. #82) is **DENIED.**

7.    Defendants Scott Owczarek, Teresa Gulick, and Nicole Rovig's Motion to Dismiss (Doc. #85) is **GRANTED.**

8.    Plaintiff's Third Amended Complaint is **dismissed with prejudice.**

9.    The Clerk shall enter judgment accordingly, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** at Fort Myers, Florida, this ___19th___ day of May, 2015.

JOHN E. STEELE
UNITED STATES DISTRICT JUDGE

Copies:

Plaintiff
Counsel of record

33